SAMUEL DUNBAR, administrator, *vs.* BENNETT DUNBAR.

Hancock.    Opinion January 31, 1888.

*Evidence.    Disclosure in probate court.    Gift causa mortis.    R. S., c. 64, § 67.*

A disclosure before the judge of probate, under R. S., c. 64, § 67, is admissible in evidence against the party who made it, in an action by the administrator to recover the property disclosed.

A few days before her death a mother gave her son her pocket-book containing some money and told him where he could find more money, which she wanted him to use for her last sickness and funeral expenses, and the balance should be his. He left the money where it was until after his mother's death, then it was delivered to him. *Held,* not a gift *causa mortis.*

ON report.

Assumpsit for money had and received.

*Wiswell and King,* for the plaintiff, cited : *Hendrickson* v. *People,* 61 Am. Dec. 721 ; *O'Dee* v. *McCrate,* 7 Maine, 471 ; *Hatch* v. *Atkinson,* 56 Maine, 327 ; *Dole* v. *Lincoln,* 31 Maine, 422 ; *Robinson* v. *Ring,* 72 Maine, 141 ; *Northrop* v. *Hale,* 73 Maine, 66.

*George P. Dutton,* for defendant.

This power of the judge of probate is clearly an extension of his jurisdiction and gives no remedy, simply furnishing a discovery, something by means of which the plaintiff can procure evidence and not evidence itself.    4 Mass. 318 ; 7 Maine, 470 ; 7 Pick. 14.

The balance was a valid gift.    The essentials of a valid gift are intention, delivery and acceptance.    In this case there was the consideration of love and affection which was a good consideration, but no consideration was necessary.    9 Met. 339.

*George M. Warren,* also for defendant.

DANFORTH, J.    The defendant was summoned before the judge of probate for the county of Hancock, on complaint of the plaintiff as administrator, to disclose any property in his possession belonging to the estate represented by the plaintiff, under the provisions of R. S., c. 64, § 67.    The statement then

made is now offered as evidence in support of this action, which is a suit upon an implied contract to recover the money so disclosed. It is objected to, as inadmissible for such purpose.

The sole object of the statute is, to obtain facts, known only to the party summoned, to lay the foundation for ulterior proceedings. If the person summoned is an executor or administrator, and reveals property belonging to the estate, without further evidence, he would be ordered by the probate court, to add to his inventory and account for the property so disclosed. *Bourne* v. *Stevenson*, 58 Maine, 499 ; *Hill* v. *Stevenson*, 63 *Id.* 365. If any other person is cited, the jurisdiction of the probate court ceases with the disclosure and the statement is similar to an answer to a bill of discovery and the facts obtained may be used as evidence when applicable, in any process proper to obtain the end sought. *O'Dee* v. *McCrate*, 7 Maine, 267. Were the disclosure incompetent evidence, in most cases it could be of no possible use. As in the case at bar the facts wanted and thus obtained, are within the knowledge of no one except the party against whom they are to be used, and can be proved only by the statement ; nor does the statement furnish any means of proving them otherwise. From the necessity of the case the defendant's disclosure must be admissible and no doubt such was the intention of the statute. In this conclusion, however, no criminal process is included.

Whether the defendant's testimony upon the stand as a witness is admissible, or otherwise, we have no occasion to enquire. He was called in his own behalf, therefore he cannot object ; and the other party has no occasion to.

Can the action be maintained upon the defendant's own statements? He admits that he has, or had, in his possession two sums of money which belonged to the plaintiff's intestate, in her lifetime. He now claims it as a gift, *causa mortis*. The burden of proof is therefore upon him to show such a gift.

The defendant's statement as to the sum of one hundred dollars is that, "A few days before my mother's death she sent for me to come there and arrange for her burial. She said she had some money she wanted me to use for her last sickness and

funeral expenses, and the rest was mine." Here was a sufficient recognition of the near approach of death, and possibly of an intended gift coupled with a trust as in *Curtis* v. *Savings Bank*, 77 Maine, 151. But the gift could not be a completed one, until there was a sufficient delivery to and retention by the donee, of the property in question. Upon this point the defendant says, "I received it at the time from my mother; she passed me the pocket-book, and told me of some other money, and where I could find it. A few days after, my brother and sister came to me and gave me the same pocket-book which I had accidentally left when my mother gave it to me." On cross examination it appears that, "When mother gave it to me I simply left it right where she gave it to me," and that he received it again after her death. Whatever might have been the delivery, it is certain that the money was not retained by the alleged donee, in his possession until the death of the donor. In *Hatch* v. *Atkinson*, 56 Maine, 324, it is held that "the donee must take and retain possession until the donor's death. On page 327, in the opinion, WALTON, J., says, "It not only requires the delivery to be actual and complete, such as deprives the donor of all further control and dominion, but it requires the donee to take and retain possession till the donor's death. Although the delivery may have been at one time complete, yet this will not be sufficient, unless the possession be constantly maintained by the donee. If the donor again has possession, the gift becomes nugatory. And public policy requires these rules to be enforced with great stringency, otherwise the wholesome safeguards of our testamentary laws become useless."

We are not unmindful of the fact that the defendant says that he left the pocket-book accidentally, but he also says he left it just where his mother gave it to him. It is also a somewhat significant fact that although there, as he says from one to three times a day, he does not call for it, but waits for it to be brought to him after the intestate's death. This does not seem to have been from forgetfulness, as he did obtain the other money in question left there for a time, but taken before the donor's death. Taking these circumstances into consideration in connection with

the fact that the money was not to be used until after the donor's death, and that nothing was said about a delivery or a retention when the pocket-book was passed, the conclusion is not an unnatural one that the passing of the pocket-book was for some purpose other then a delivery, perhaps that the amount might be ascertained, and that both parties understood that it was to remain in the custody of the intestate, as it evidently did. But in any view the evidence of a delivery falls very far short of that "clear and unmistakable proof," which is required in cases of this kind.

The testimony as to the seventy-nine dollars found in the tea pot, utterly fails as satisfactory proof of either an intended gift, or delivery. The statement does not authorize the conclusion that it was included in the money which the intestate desired the defendant to use the necessary amount of, and retain the balance. It is left then to the simple statement that she informed him where the money could be found; but for what purpose does not appear. He there found the money but did not take it then, afterwards he did. This taking appears to have been done not in the intestate's presence, but whether by her direction, or even with her knowledge or consent does not appear.

It appears that the defendant has paid certain bills for the benefit of the estate as directed by the intestate, for which he produces vouchers, amounting to fifty dollars; for these he should have credit; another of twelve dollars without a voucher, but, of its payment no question seems to be made. This therefore may properly be allowed. The sum of these taken from the one hundred and seventy-nine dollars for which the defendant is chargeable, leaves the amount of one hundred and seventeen dollars now due; to this must be added interest from the date of the writ.

*Judgment for the plaintiff for $117,*
*and interest from date of writ.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.